# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Lawrence Danduran, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| Plaintiff, | |
| vs. | Case No. 3:17-cv-155 |
| United States of America, | |
| Defendant and Third-Party Plaintiff, | |
| vs. | |
| Cheryl Huntzinger, | |
| Third-Party Defendant. | |

Before the Court is Plaintiff Lawrence Danduran's motion for summary judgment filed on November 1, 2018. See Doc. No. 30. The Defendant, United States of America, filed a response in opposition to the motion on November 21, 2018. See Doc. No. 42. The Plaintiff filed a reply brief on November 28, 2018. See Doc. No. 45. For the reasons set forth below, the motion for is denied.

## I. BACKGROUND

This is an action for refund of tax penalties assessed for failure to remit to the IRS employment taxes withheld from employees' wages. Danduran and Third-Party Defendant Cheryl Huntzinger ("Huntzinger") each owned a 50 percent interest in Mill Pump & Cheers, LLC ("Mill Pump"), a former North Dakota limited liability company. Mill Pump operated a convenience store located in New Rockford, North Dakota, from July 2010 until April 2014.

Danduran was never an officer of Mill Pump but rather was a co-owner. The business was

1

run as a partnership. Mill Pump did not have a board of directors, did not issue stock to its owners, and did not give titles to its owners. Danduran's initial contributions to Mill Pump consisted of a $45,000 loan and labor to complete renovations of the building in which the convenience store operated.

Once Mill Pump began operating the convenience store, Danduran primarily handled fuel management, maintenance, and inventory. Danduran and Huntzinger jointly managed the day-to-day operations of Mill Pump after the store initially opened. Danduran and Huntzinger both had signature authority on Mill Pump's checking account. Danduran signed for and acquired Mill Pump's liquor license and tobacco license. Huntzinger wrote the vast majority of the checks to Mill Pump's creditors. Danduran signed checks to vendors when necessary. Danduran relied on Huntzinger to file employment tax returns, pay employment taxes, prepare payroll, and to collect and remit trust fund taxes. Mill Pump employed several persons to operate the convenience store. Huntzinger was primarily responsible for calculating or preparing Mill Pump's payroll checks and tax withholdings. Huntzinger signed and filed the payroll tax returns for Mill Pump.

Danduran established the relationship with Mill Pump's fuel vendor and ensured that all payments from Mill Pump were made to the fuel vendor. Mill Pump's relationship with its fuel vendor was dependent on a personal guarantee, provided by Danduran, that the fuel vendor's bills would be paid. Danduran calculated amounts due to the fuel vendor, and directed Huntzinger to make payments in the correct amount.

Sometime in 2011 or 2012, Danduran and Huntzinger had a "falling-out" and Danduran found another job in sales at a car dealership. After he took the car dealership job, Danduran continued to come to Mill Pump most days to handle fuel management and maintenance. Danduran received both a salary from Mill Pump and monthly repayments on the personal loan he made to

2

renovate the store and purchase inventory.

Mill Pump, like all employers, was required by law to withhold federal income and Federal Insurance Contributions Act (FICA) taxes, which include Social Security and Medicare taxes, from its employees' wages and pay the withheld wages over to the IRS. The amounts withheld from employee wages are commonly referred to as "trust fund taxes" because the employee's income and FICA taxes are said to be held in trust by the employer for the United States. See 26 U.S.C. § 7501. The trust fund taxes, along with the employer's own FICA obligations (collectively, "employment taxes"), are reported quarterly on a Form 941 (i.e., Employer's Quarterly Federal Tax Return). Mill Pump was required by law to make periodic deposits of employment taxes in an appropriate federal depository in accordance with federal deposit regulations. See 26 U.S.C. § 6302; 26 C.F.R. § 31.6302-1.

Mill Pump failed to pay its federal income and FICA taxes, which include Social Security and Medicare taxes, withheld from its employees' wages for: (1) the third and fourth quarters of 2010; (2) the first, second, third, and fourth quarters of 2011; (3) the first, second, third, and fourth quarters of 2012; and (4) the first quarter of 2013 (collectively, the "tax periods at issue"). The persons responsible for collecting, accounting for, and paying over trust fund taxes withheld from employees' wages, who willfully fail to do so, are liable for a penalty in the amount of tax withheld but not paid over. See 26 U.S.C. § 6672.

On March 24, 2014, the IRS assessed against Danduran a trust fund recovery penalty under 26 U.S.C. § 6672 for the tax periods at issue. On August 7, 2014, Danduran paid the full amount assessed plus interest in the amount of $56,280.44. On June 19, 2015, Danduran filed a Form 843 Claim for Refund and Request for Abatement for the tax periods at issue. On October 20, 2015, the IRS sent Danduran notice that his claim for refund and abatement was disallowed. On November

18, 2015, Danduran filed an appeal with the IRS Appeals Office. Danduran's appeal was denied in September 2016.

On July 28, 2017, Danduran filed suit against the United States demanding a refund of the penalties under 26 U.S.C. § 6672 assessed to Danduran for the tax periods at issue. The Government filed an answer on October 18, 2017. On October 19, 2017, the Government filed a third-party complaint against Cheryl Huntzinger seeking a judgment against her for any amounts it is required to refund to Danduran. The Clerk's entry of default was made against Huntzinger on February 5, 2018. Danduran moved for summary judgment on November 1, 2018. The motion has been fully briefed. Trial is scheduled for May 14, 2019.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id. The purpose of summary judgment is to assess the evidence and decide whether there is a genuine need for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir.

2005). The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1). If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate. Matsushita, 475 U.S. at 587. The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252.

### III.  LEGAL DISCUSSION

This is an action for refund of tax penalties assessed for failure to remit to the IRS employment taxes withheld from employees' wages. The Eighth Circuit Court of Appeals has succinctly stated the law to be applied in such cases as follows:

> Employers must withhold income, Social Security, and Medicare taxes from employees' wages. 26 U.S.C. §§ 3101; 3102(a), (b); 3402; 3403. The law requires the employer to hold those taxes in trust and remit them to the IRS at the appropriate intervals. 26 U.S.C. § 7501. An employer holding the taxes in trust may not use the taxes for any other purpose. When an employer fails to remit the taxes, § 6672 imposes liability against any person who is (1) a responsible person and (2) willfully fails to pay over withholding taxes to the United States.
>
> Under § 6672, a responsible person is someone who has the status, duty and authority to avoid the corporation's default in collection or payment of the taxes. More than one person may be a responsible person under § 6672 and delegating the responsibility of managing funds does not relieve one of his responsibilities. When determining responsible person status under § 6672, courts often consider a non-exhaustive list of factors, including whether the individual:

5

>    (1) serves as an officer or member of the board of directors;
>    (2) owns substantial stock in the company;
>    (3) manages day-to-day operations;
>    (4) possesses the authority to hire or fire employees;
>    (5) makes decisions as to the disbursement of funds and payment of creditors;
>    (6) controls bank accounts and disbursement of records; and
>    (7) possesses check-signing authority.

Oppliger v. United States, 637 F.3d 889, 893 (8th Cir. 2011) (internal quotations and citations omitted).

> An individual willfully fails to pay over employment taxes if he acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes, or by proceeding with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the government. The term willfully does not connote a bad or evil motive, but rather means a voluntary, conscious, and intentional act, such as the payment of other creditors in preference to the United States.

Id. at 893–94 (internal quotations and citations omitted).

In this case, the record demonstrates Danduran is arguably a responsible person such that the grant of summary judgment for the Plaintiff is unwarranted. For example, Danduran owned a 50% interest in Mill Pump. See Doc. No. 32-1, pp. 38-39.[1] Danduran invested $45,000 of his own money into Mill Pump to renovate the store. See Doc. No. 32-1, pp. 34-37. Danduran and Huntzinger jointly managed the day-to-day operations of Mill Pump when the store first opened. See Doc. No. 32-1, pp. 38-39. Danduran had the authority to hire and fire employees. See Doc. No. 32-1, p. 33. Danduran was listed as a signatory on Mill Pump's bank account, and had access to the company's checkbook. See Doc. Nos. 32-1, p. 34 and 43-2. In the later years of the operation, Danduran continued to come to Mill Pump most days to handle fuel management and maintenance. See Doc. No. 32-1, pp. 68-69. Danduran established the relationship with Mill Pump's fuel vendor

---

[1] All deposition citations will be to the deposition page number rather than the ECF page numbers.

and he ensured that all payments from Mill Pump were made to the fuel vendor. See Doc. No. 32-1, pp. 131-32. Danduran calculated amounts due to the fuel vendor, and directed Huntzinger to make payments in the correct amount although sometimes Danduran would sign the checks.. See Doc. No. 32-1, pp. 128-29.

Thus, it would appear the *Oppliger* factors support, at least arguably, the Government's contention that Danduran is a responsible person. It must also be remembered that more than one person in a business may be considered a responsible person and delegating authority does not relieve a responsible person of liability under Section 6672. Keller v. United States, 46 F.3d 851, 854 (8th Cir. 1995).

Danduran's contention that he did not act willfully also fails. Danduran claims he did not act willfully within the meaning of Section 6672 because Huntzinger never spoke about payroll or tax issues with him and he had no knowledge of taxes being owed until he received a notice from the IRS. However, Huntzinger denied this version of events in her deposition when she stated Danduran was aware of the tax problems in late 2011 or early 2012. See Doc. No. 32-2, pp. 37-38. Huntzinger also testified Danduran never told her to cease paying other creditors and pay the taxes. See Doc. No. 32-2, p. 42. And Danduran received a monthly paycheck from Mill Pump of $2,200 throughout most of the time the store was in operation. See Doc. Nos. 32-2, p. 42, 32-1, p. 107. Thus, there is arguably some evidence of willful behavior by Danduran which creates a genuine issue of material fact for the jury to resolve, and which precludes the grant of summary judgment to the Plaintiff.

Danduran also contends he is not a person as defined by Section 6671(b). Section 6671(b) states as follows:

> Person defined.--The term 'person', as used in this subchapter, includes an officer

or employee of a corporation, <u>or a member or employee of a partnership</u>, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

26 U.S.C. § 6671(b) (emphasis added). Danduran contends that because he was not an employee or an officer of Mill Pump, he cannot be a "person" within the meaning of the statute. However, this argument ignores the fact that members of partnerships are explicitly deemed persons under Section 6671(b). There is no dispute that Danduran and Huntzinger operated Mill Pump as a partnership. Danduran acknowledges as much in his brief in support of his motion for summary judgment when he states "Mill Pump, a two member operation, never elected to be treated as a corporation, and therefore, it must be treated as a partnership." See Doc. No. 31, p. 7. The term "includes" in the definition of "person" is inclusive rather than exclusive. See 26 U.S.C. § 7701(c). Danduran is clearly a person within meaning of the statute.

### IV. <u>CONCLUSION</u>

For the reasons set forth above, the Plaintiff's motion for summary judgment (Doc. No. 30) is **DENIED**. The motion for hearing (Doc. No. 33) is also **DENIED**.

**IT IS SO ORDERED**.

Dated this 12th day of March, 2019.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court
